Julio I. SOTO, Plaintiff

v.

Andrew P. BZDEL, Daniel Rose, and Edmund Hartwell, Defendants

No. CIV.A.01–30043–KPN.

United States District Court,
D. Massachusetts.

Aug. 26, 2002.

Benjamin A. Barnes, Northampton, MA, for Julio I. Soto, Plaintiff.

Joseph P. Kittredge, Law Office of Timothy M.Burke, Needham, MA, for Andrew P. Bzdel, Daniel Rose, Defendants.

*MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND/OR AMENDMENT OF THE JUDGMENT PURSUANT TO RULE 52(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE (Docket No. 40)*

NEIMAN, United States Magistrate Judge.

Julio Soto ("Plaintiff") asks the court to reconsider and amend (i.e., withdraw) its July 26, 2002 summary judgment decision in which it determined that Andrew P. Bzdel, Daniel Rose and Edmund Hartwell ("Defendants") were qualifiedly immune from Plaintiff's § 1983 claims. Plaintiff maintains that the court's decision, "while thoroughly grounded in *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), appears to have overlooked the clarification and softening of the *Wilson* standard as enunciated in *Hope v. Pelzer*, —— U.S. ——, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)" (Plaintiff's Motion at 1.) For the reasons stated below, the court will allow Plaintiff's motion insofar as it seeks reconsideration, but will not amend or withdraw its judgment.

The court was well aware of *Hope* when it issued its decision and, in fact, cited *Hope* in the first step of its qualified immunity analysis. Plaintiff, however, emphasizes that part of *Hope* which addresses the second step of the analysis, namely, whether a constitutional right was "clearly established" at the time of Defendants' alleged violations. Citing *Wilson*, this court answered that question in the negative. The court concluded that "Plaintiff

ha[d] 'not brought to [the court's] attention any cases of controlling authority in [this] jurisdiction at the time of the incident which clearly established a rule on which [he] seek[s] to rely,' nor ha[d] he 'identified a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" (June 26, 2002 Memo. and Order at 13 (quoting *Wilson* 526 U.S. at 617, 119 S.Ct. 1692).) Plaintiff asserts that this very language has been "softened" by the Supreme Court's recent decision in *Hope.*

In *Hope,* the Supreme Court elaborated on what is required for a particular right to be "clearly established" in the context of qualified immunity. Reiterating what it had said previously, the Court explained:

> For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell* [*v. Forsyth,* 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ]; but it is to say that in the light of pre-existing law, the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

*Hope,* —— U.S. at ——, 122 S.Ct. at 2515. The Court then explained that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* at 2516. Thus, previous cases need not be "fundamentally similar." *Id.* "[T]he salient question," the Court stated, "is whether the state of the law [at the time of the state action] gave respondents fair warning that their alleged

treatment of [the plaintiff] was unconstitutional." *Id.*

This court does not believe that the *Hope* elaboration, recently echoed by the First Circuit in *Suboh v. District Attorney's Office of the Suffolk District,* 298 F.3d 81, 92–94 (1st Cir.2002), so fundamentally changes the qualified immunity analysis as to necessitate a different result here. First, unlike the situation in *Hope,* the facts alleged by Plaintiff do not form the basis of an "apparent" constitutional violation. Second, the court neither now nor at the time it issued its summary judgment decision believes that the "state of the law" in October of 1999 gave Defendants "fair warning" that their alleged treatment of Plaintiff "was unconstitutional."

In reaching this conclusion, the court did not rigidly confine itself, as Plaintiff contends, to either "published precedent on all fours" or even to cases with "materially similar" facts. (Plaintiff's Motion at 3.) In addition to addressing cases having facts similar to the case at bar, the court, as indicated, considered whether there was "a consensus of cases of *persuasive* authority such that a reasonable officer could not have believed that his actions were lawful." (June 26, 2002 Memo. and Order at 13 (emphasis added).) The court also examined case law which was indirectly on point and still found scant support for Plaintiff's position. (See, e.g., *id.* at 12–13.)

Finally, the court specifically addressed the affidavit of the clerk-magistrate of the Northampton District Court, urged upon the court again, and found it wanting. (See *id.* at 13.) The court determined that the affidavit, while informative as to the system concerning recalled warrants, insufficiently demonstrated that any *constitutional* right was clearly established in October of 1999. (*Id.*) Unfortunately for him, Plaintiff's preference that the "state of the law" be statutory, not constitutional, cannot win the day.[1]

---

1. At best, Plaintiff asserts that "the language

of the Notice of Recall of Warrant ha[s] been

Accordingly, Plaintiff's motion for reconsideration is ALLOWED, but his request that the court amend its judgment is DENIED.

IT IS SO ORDERED.

substantially the same in Massachusetts for twenty years" and that "[i]t is permissible to *assume* that the form generated by th[e warrant management] system correctly expresses the state of the law in Massachusetts." (Plaintiff's Motion at 3 (emphasis added).) As Defendants assert, however, the legislature, when it recognized the computerization of the warrant management system in 1995, did not incorporate into the law any indication that a recall notice would supercede a facially valid warrant. *See* Mass. Gen. L. ch. 276, § 23A.